STATE OF MINNESOTA

IN SUPREME COURT

A14-0834

Original Jurisdiction

Per Curiam
Took no part, Stras, J.

In re Petition for Disciplinary Action against William Bernard Butler, a Minnesota Attorney, Registration No. 227921

Filed: August 12, 2015
Office of Appellate Courts

_____

Martin A. Cole, Director, Timothy M. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

William Bernard Butler, Minneapolis, Minnesota, pro se.

_____

S Y L L A B U S

1.      The referee's findings of fact and conclusions regarding respondent's rule violations are not clearly erroneous.

2.      An indefinite suspension from the practice of law with no right to petition for reinstatement for 2 years is the appropriate discipline for respondent's lengthy pattern of misconduct, which includes the pursuit of frivolous litigation, the fraudulent joinder of defendants, the refiling of previously dismissed cases, and the failure to pay sanctions.

1

O P I N I O N

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against respondent William Bernard Butler on May 20, 2014.[1] On June 5, 2014, we referred the matter to a referee, who heard the matter on September 29, 2014. Following the hearing, the referee found that Butler pursued a pattern of frivolous litigation, fraudulently joined law firms and attorneys as defendants, refiled previously dismissed matters, and failed to pay sanctions imposed by the United States District Court for the District of Minnesota, in violation of Minn. R. Prof. Conduct 3.1, 3.2, and 3.4(c). The referee recommended that we indefinitely suspend Butler from the practice of law for a minimum of 2 years. We conclude that the referee did not clearly err in his findings of fact and conclusions that Butler violated the Minnesota Rules of Professional Conduct. We also agree with the referee's recommended discipline. We, therefore, indefinitely suspend Butler from the practice of law with no right to petition for reinstatement for a minimum of 2 years.

---

[1]    At oral argument, the attorney for the Director stated that this matter first came to the attention of the Office of Lawyers Professional Responsibility in 2012. The Director agreed to Butler's request to stay the disciplinary proceedings pending the resolution of Butler's appeal to the United States Court of Appeals for the Eighth Circuit challenging sanctions that the Minnesota federal district court had imposed. When Butler's challenge to the federal sanctions was completed in mid-2013, the Director's disciplinary investigation began. The Director submitted charges of professional misconduct to a panel of the Lawyers Professional Responsibility Board in February 2014. *See* Rule 8(e), Rules on Lawyers Professional Responsibility (RLPR) (addressing an attorney's right to have charges of professional misconduct submitted to a panel of the Lawyers Board). Following the panel's determination that a petition for disciplinary action should be filed against Butler, *see* Rule 9(j), RLPR, the Director served the petition in May 2014.

I.

Butler was admitted to the practice of law in Minnesota in 1992. He has not been the subject of prior discipline. The present disciplinary action involves professional misconduct in more than 40 matters. The referee found that Butler filed frivolous lawsuits, fraudulently joined defendants, refiled previously dismissed cases, and failed to pay sanctions.[2] The referee concluded that Butler's conduct violated Minn. R. Prof. Conduct 3.1, 3.2, and 3.4(c).

We first address Butler's challenges to the referee's findings of fact and conclusions that Butler violated the Minnesota Rules of Professional Conduct. Because Butler ordered a transcript of the disciplinary hearing, the referee's findings of fact and conclusions are not conclusive. Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR); *In re Ulanowski*, 800 N.W.2d 785, 793 (Minn. 2011). We "give

---

[2] Butler argues that the referee made "no independent factual findings from evidence presented at trial" and that the federal pleadings and court orders on which the referee relied are inadmissible hearsay. This argument is akin to that of the respondent in *In re Murrin*, 821 N.W.2d 195 (Minn. 2012). In *Murrin*, the respondent argued that the referee failed to conduct an independent review of the facts underlying the admonishments contained in the court orders that were admitted as evidence against Murrin. *Id.* at 204-05. We concluded that, "while the referee included excerpts from the court orders in his findings of fact, there is no indication in the record that the referee failed to independently review the facts of the three cases and the facts presented during the hearing." *Id.* at 205. Similarly, there is no evidence that the referee in this matter failed to review the facts or make independent factual findings. Additionally, although "[t]he Minnesota Rules of Evidence apply to disciplinary hearings," *In re Dedefo*, 752 N.W.2d 523, 528 (Minn. 2008), in the proceeding before the referee, Butler did not object to the admission of the federal district court orders and pleadings on hearsay grounds. Furthermore, the evidence on which the referee relied has sufficient "circumstantial guarantees of trustworthiness" to meet the requirements for the residual exception to the hearsay rule. Minn. R. Evid. 807.

great deference to the referee's findings of fact and will not reverse those findings if they have evidentiary support in the record and are not clearly erroneous." *In re Coleman*, 793 N.W.2d 296, 303 (Minn. 2011) (citation omitted). A finding is "clearly erroneous" when we are "left with the definite and firm conviction that a mistake has been made." *In re Lyons*, 780 N.W.2d 629, 635 (Minn. 2010). With regard to the referee's conclusions, we review de novo the interpretation of the Minnesota Rules of Professional Conduct, and we review for clear error the application of the rules to the facts of the case. *In re Aitken*, 787 N.W.2d 152, 158 (Minn. 2010).

A.

We begin by considering the referee's findings of fact and conclusions regarding Butler's pattern of frivolous litigation. The referee found that Butler filed more than 40 lawsuits on behalf of homeowners, claiming that the foreclosures of their properties were invalid. A main theory of Butler's mortgage litigation was that, in order to foreclose on a property, the mortgagee (frequently a bank or the Mortgage Electronic Registration System (MERS)) must hold both the mortgage, which allows the mortgagee to foreclose, and the underlying promissory note, which grants the mortgagee (or other payee) the right to receive payments from the mortgagor.

The referee found that Butler's theory is contrary to Minnesota law and was expressly rejected by our court in *Jackson v. MERS*, 770 N.W.2d 487, 501 (Minn. 2009), as well as by the Eighth Circuit and the federal district court. In *Jackson*, the plaintiffs argued that "a mortgagee cannot hold legal title to a mortgage unless that mortgagee also

4

has at least some interest in the underlying indebtedness."[3] *Id.* at 499. Thus, according to the plaintiffs' theory in *Jackson*, a mortgagee would need to have legal title[4] to the mortgage *and* hold the promissory note underlying the mortgage in order to foreclose by advertisement. *Id.* at 498-99. We rejected this argument and concluded that a mortgagee does *not* need to have an interest in the underlying debt in order to have legal title to the mortgage and the right to foreclose. *Id.* at 501. In *Stein v. Chase Home Finance, LLC*, 662 F.3d 976, 980 (8th Cir. 2011), the Eighth Circuit expressly adopted our holding in *Jackson*.

The referee also found that Butler advanced frivolous claims by arguing repeatedly that the federal district courts should apply the "possibility" pleading standard to his clients' claims, rather than the "plausibility" pleading standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).[5] Federal pleading standards apply to claims in federal court even when those claims are based on Minnesota law. *See Council Tower Ass'n v. Axis Specialty Ins. Co.*, 630 F.3d 725, 730 (8th Cir. 2011). The federal district court and the Eighth Circuit

---

[3] The underlying debt in *Jackson* was a promissory note. 770 N.W.2d at 491.

[4] "Legal title" is defined as a title that "evidences apparent ownership but does not necessarily signify full and complete title or a beneficial interest." *Legal title*, *Black's Law Dictionary* (8th ed. 2004).

[5] The United States Supreme Court articulated the plausibility standard for civil pleadings in federal court in *Iqbal* and *Twombly*. This standard requires a complaint to contain "enough facts to state a claim to relief that is plausible on its face." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 601 (Minn. 2014) (quoting *Twombly*, 550 U.S. at 570). In *Walsh*, we declined to adopt the plausibility standard for civil pleadings in Minnesota state court, instead deciding to retain the traditional notice pleading standard. *Id.* at 606.

rejected Butler's pleading argument as well.  *See, e.g.*, *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013) (affirming the district court's dismissal of state law claims because the plaintiffs did not sufficiently plead them according to federal pleading standards).

The record supports the referee's findings concerning Butler's arguments as to the validity of the foreclosures at issue and the applicable pleading standard.  Therefore, these findings are not clearly erroneous.  The referee identified more than 40 mortgage-related cases in which Butler advanced legal theories that mortgage foreclosures were defective because the mortgagees did not possess the promissory notes associated with the mortgages or because the federal court applied the wrong pleading standard.  Each case was filed after our decision in *Jackson*, 770 N.W.2d 487, and approximately 30 of them were filed after the Eighth Circuit's decision in *Stein*, 662 F.3d 976.  All were filed after *Iqbal*, 556 U.S. 662.  Butler also filed more than 20 cases after he was first sanctioned by the federal district court for his "unreasonable and vexatious conduct" in bringing these types of claims, which, based on the federal pleading standard, were dismissed for failure to state a claim on which relief can be granted.

Based on his factual findings, the referee concluded that Butler's conduct violated Minn. R. Prof. Conduct 3.1, which provides that a lawyer will not bring a proceeding "unless there is a basis in law and fact for doing so that is not frivolous."  This rule does not prohibit "a good faith argument for an extension, modification, or reversal of existing law."  Minn. R. Prof. Conduct 3.1.  The relevant standard for determining whether an argument has a good-faith basis in law and fact is an objective standard that requires us to

6

consider what a reasonable attorney, in light of that attorney's professional duties, would do under similar circumstances. *In re Michael*, 836 N.W.2d 753, 762 (Minn. 2013). We have concluded that an attorney violated Rule 3.1 by engaging in a pattern of bad-faith litigation, *In re Nett*, 839 N.W.2d 716, 717-18 (Minn. 2013), filing lawsuits that lacked a good-faith basis in law or fact, *In re Van Sickle*, 744 N.W.2d 374, 374 (Minn. 2008), or filing frivolous motions as part of a "pattern of harassing and frivolous litigation," *In re Nathan*, 671 N.W.2d 578, 580, 584 (Minn. 2003).

Butler's arguments regarding a foreclosure's validity and the appropriate pleading standard were rejected by multiple federal district court judges and the Eighth Circuit. *See, e.g.*, *Karnatcheva*, 704 F.3d at 548. By ignoring precedent that was clearly contrary to his arguments and failing to make a good-faith argument for the modification or reversal of that law, Butler has not acted as a reasonable attorney would under the same or similar circumstances. *Michael*, 836 N.W.2d at 762. His arguments completely lacked any good-faith basis in law. *See id.* Therefore, the referee did not clearly err when he concluded that Butler repeatedly violated Minn. R. Prof. Conduct 3.1.

B.

We next consider the referee's findings and conclusions regarding Butler's fraudulent joinder of defendants. The referee found that Butler fraudulently joined Minnesota law firms and attorneys in approximately 20 cases without any good-faith basis to assert claims against them in an attempt to obstruct the exercise of federal jurisdiction. During the course of this fraudulent joinder scheme, Butler repeatedly moved to remand these cases to state court for lack of diversity jurisdiction.

7

The federal district court denied all but one motion for remand, consistently concluding that Butler had no good-faith basis for the claims against the Minnesota law firms and attorneys. The referee explained that "[t]here is no evidence of any case in which the joinder of the Minnesota attorneys was found not to be fraudulent." The referee concluded that Butler's repeated fraudulent joinder of Minnesota law firms and attorneys violated Rule 3.1 because there is "no evidence of any good faith argument for modification or reversal of existing law to allow such a joinder."

The record supports the referee's findings of fact and conclusion that Butler repeatedly violated Minn. R. Prof. Conduct 3.1. According to federal court documents, in numerous cases the federal district court found that Butler's joinder of Minnesota law firms and attorneys was fraudulent and without a factual basis. Therefore, the referee did not clearly err in his findings or conclusions regarding Butler's fraudulent joinder of parties.

## C.

We next review the referee's findings and conclusions regarding Butler's practice of refiling in state court cases that he had voluntarily dismissed in federal court. The referee found that Butler filed five cases in state district court that the defendants removed to federal district court. After each removal, Butler filed a notice of dismissal without prejudice. Butler then refiled each case under a different name in state district court within one week of the prior dismissal. The referee concluded that this practice violated Minn. R. Prof. Conduct 3.2 because the tactic of dismissing and refiling the same

8

lawsuit "use[s] delay to harass defendants or deny them a timely resolution of the claims against them."

"A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Minn. R. Prof. Conduct 3.2. We have held that an attorney violated Rule 3.2 when the attorney repeatedly filed amended and voluminous complaints, causing delays to proceedings and increasing costs to defendants. *Murrin*, 821 N.W.2d at 207.

Butler does not contest that he dismissed multiple cases that had been removed to federal court and refiled them in state court. Butler denies only that his actions were intended to delay litigation. In light of the dispositions of Butler's previous filings, however, it is impossible to conceive of any purpose for Butler's course of action other than to delay the proceedings or, as suggested by one federal district judge, to avoid assignment to certain judges. The referee rejected Butler's asserted reasons for dismissing the cases from federal court. *See In re Voss*, 830 N.W.2d 867, 874-75 (Minn. 2013) (stating that we defer to the referee's findings "when they are based on a credibility determination" and that a referee is free to reject the testimony of an attorney as "not credible"). In doing so, the referee relied on pleadings filed in federal court, which provide ample evidence to support the referee's determination that Butler's actions violated Rule 3.2. Contrary to Butler's arguments, the referee did not clearly err.

D.

We next review the referee's findings and conclusions that Butler failed to pay court-imposed sanctions and attorney fees. The referee found that Butler failed to pay

9

court-imposed sanctions of $50,000 and $75,000 and attorney fees of $29,746.70, $50,000, $11,437.65, $26,602.15, and $56,451.97. The referee concluded that Butler's failure to pay the sanctions and attorney fees violated Minn. R. Prof. Conduct 3.4(c).

A lawyer is prohibited from "knowingly disobey[ing] an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Minn. R. Prof. Conduct 3.4(c). Accordingly, an attorney's failure to pay court-ordered sanctions may violate Rule 3.4(c). *In re Moe*, 851 N.W.2d 868, 871 (Minn. 2014) (holding that attorney violated Rule 3.4(c) when he failed to pay a $5,000 sanction imposed because he had acted in bad faith when discharging his duties as a guardian and conservator); *Nathan*, 671 N.W.2d at 582-83 (holding that attorney violated Rule 3.4(c) when he failed to pay approximately $4,600 in sanctions and attorney fees imposed because the attorney violated a court order and engaged in frivolous and harassing conduct).

The record supports the referee's finding that Butler knowingly failed to pay any of the sanctions or attorney fees ordered by the federal district court. In the hearing before the referee, Butler acknowledged that he had not paid the sanctions. Butler also testified before the referee: "[A]s a matter of principle, if I had [the money to pay the sanctions], it's—there's a real question of could I, in good conscience, pay when I know what I know." This testimony supports the conclusion that his failure to pay any of the sanctions was a conscious decision to disregard a court order.

Additionally, two federal district court judges found Butler in contempt of court for failing to pay court-ordered sanctions after each conducted an evidentiary hearing. In

10

a contempt proceeding, the burden is on the violator of a court order to demonstrate an inability to comply with the court order. *Chicago Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000). The only evidence Butler provided during the contempt proceedings (and in this discipline proceeding) for his inability to pay court-imposed sanctions was his testimony that he was unable to pay. Butler's testimony was countered, however, by evidence that Butler's law firm had significant revenue during this same period of time. Regarding Butler's testimony, the federal district court ruled: "Even if a conclusory assertion of inability to pay could theoretically be sufficient to avoid a finding of contempt, it would not be sufficient in this particular case, because Butler was not a credible witness." Butler's actions before the federal district court and that court's two contempt orders provide additional support for the referee's finding that Butler knowingly failed to pay the sanctions. Accordingly, the referee did not clearly err by finding that Butler knowingly failed to pay the sanctions imposed by the federal district court. The referee's conclusion that Butler's conduct violated Minn. R. Prof. Conduct 3.4(c) is legally sound.

## II.

Having concluded that Butler violated the rules of professional conduct, we now address the appropriate discipline for Butler. We impose discipline for professional misconduct "not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010); *see also In re De Rycke*, 707 N.W.2d 370, 373 (Minn. 2006). We place "great weight on the referee's

11

recommended discipline" but "retain ultimate responsibility for determining the appropriate sanction." *Rebeau*, 787 N.W.2d at 173.

To determine the appropriate sanction for attorney misconduct, we consider four factors: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *In re Grigsby*, 764 N.W.2d 54, 62 (Minn. 2009). We look to similar cases for guidance in deciding what discipline to impose, but we ultimately determine the appropriate discipline on a case-by-case basis after considering aggravating and mitigating circumstances. *In re Lundeen*, 811 N.W.2d 602, 608 (Minn. 2012).

We first consider the nature of Butler's misconduct. Butler brought frivolous lawsuits, fraudulently joined parties, or refiled dismissed cases in more than 40 matters. This misconduct occurred over approximately 3 years, until Butler's suspension from practice before the Eighth Circuit and the District of Minnesota in 2013. We have held that such an abuse of the litigation process constitutes "serious" misconduct and warrants a suspension. *See Murrin*, 821 N.W.2d at 207-08 (suspending for 6 months an attorney who, over the course of 2 years, failed to comply with several court orders, continued to name defendants in his pleadings even after the defendants had been dismissed from the actions by the court, and continued to assert claims after the claims had been dismissed); *In re Selmer*, 568 N.W.2d 702, 704-05 (Minn. 1997) (suspending for 12 months an attorney who pursued a pattern of frivolous litigation, in addition to committing other rule violations); *In re Jensen*, 542 N.W.2d 627, 633-34 (Minn. 1996) (suspending for 18 months an attorney who filed frivolous claims, in addition to committing other rule

12

violations); *see also In re Daly*, 291 Minn. 488, 492-93, 189 N.W.2d 176, 180 (1971) (disbarring an attorney who repeatedly filed lawsuits to harass banking institutions and refused to comply with court orders).

Butler also has failed to pay approximately $300,000 in court-ordered sanctions and attorney fees. Failure to pay court-ordered sanctions also warrants discipline. *See Nathan*, 671 N.W.2d at 580; *see also id.* at 582-86 (suspending for 6 months an attorney who failed to pay approximately $4,600 in sanctions and attorney fees, engaged in a pattern of harassing and frivolous litigation, and made false statements to the court).

We next examine the cumulative weight of Butler's misconduct. "[T]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004). The violation of multiple rules of professional conduct, the commission of such violations in multiple instances, and a pattern of attorney misconduct that occurs over a lengthy period of time may merit the imposition of a serious sanction. *Ulanowski*, 800 N.W.2d at 801.

The cumulative weight of Butler's misconduct is substantial. Butler's misconduct involved more than 40 matters and occurred over a 3-year period, despite the federal court's deterrent efforts. *See, e.g.*, *In re Rooney*, 709 N.W.2d 263, 269 (Minn. 2006) (deeming it important that the attorney's misconduct occurred over the course of a year and "was not a single, isolated incident or a brief lapse in judgment").

The third and fourth factors that we consider are the harm to the public and the harm to the legal profession. In doing so, we examine " 'the number of clients harmed

13

[and] the extent of the clients' injuries.' " *Coleman*, 793 N.W.2d at 308 (quoting *In re Randall*, 562 N.W.2d 679, 683 (Minn. 1997)). Butler has caused serious harm to the public and the legal profession. Because of his actions, the federal district court has sanctioned Butler's clients directly.[6] The federal court system also has expended significant judicial resources because of Butler's many frivolous claims. *See Murrin*, 821 N.W.2d at 208 ("[F]rivolous claims harm the legal profession because the claims waste court resources."). The defendants in these cases, including those fraudulently joined by Butler, also have incurred legal expenses directly attributable to Butler's misconduct. *See Ulanowski*, 800 N.W.2d at 801 (concluding that attorney harmed the legal profession because his frivolous claims cost opposing parties approximately $46,000 in legal fees); *In re Albrecht*, 779 N.W.2d 530, 542 (Minn. 2010) (concluding that attorney's neglect harmed the legal profession by causing needless expenditure of the resources of opposing counsel).

The referee found several other factors that aggravate the severity of Butler's misconduct, none of which has been challenged by Butler. First, Butler's misconduct was intentional. He purposely filed cases based on theories rejected by our court, the federal district court, and the Eighth Circuit; and he continued his misconduct after being sanctioned by the federal district court. *See In re Fru*, 829 N.W.2d 379, 390 (Minn. 2013) (listing the intentional nature of attorney's misconduct as an aggravating factor). Second, Butler refuses to recognize his misconduct. In fact, he demonstrates absolutely

---

[6] In one case filed by Butler, each of his clients was ordered to pay $487.66 in costs. In another case, each of Butler's clients was ordered to pay $649.36 in costs.

14

no remorse. *See Rebeau*, 787 N.W.2d at 176 ("The lack of remorse also constitutes an aggravating circumstance."). Third, having practiced law for more than 20 years, Butler has substantial legal experience, which also aggravates the severity of his misconduct. *See Voss*, 830 N.W.2d at 878 (concluding that an attorney's 35 years of experience was an aggravating factor).

Therefore, having considered the nature of the misconduct and the aggravating factors that exist, as well as our prior decisions, we conclude that the appropriate sanction for Butler's misconduct is an indefinite suspension with no right to petition for reinstatement for a minimum of 2 years.

Accordingly, we order that:

1.     Respondent William Bernard Butler is indefinitely suspended from the practice of law, effective 14 days from the date of the filing of this opinion, and he shall be ineligible to petition for reinstatement for a minimum of 2 years from the effective date of the suspension.

2.     Respondent shall comply with the requirements of Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

3.     Respondent shall pay $900 in costs, plus disbursements, pursuant to Rule 24, RLPR.

4.     As a condition for reinstatement, respondent must establish that he has made a good-faith effort to satisfy the outstanding amount of $299,238.47 in court-ordered sanctions and attorney fees. To the extent full payment has not been made at the time a petition for reinstatement is filed, respondent must provide a detailed disclosure of

15

his financial condition since the date the court-ordered sanctions and attorney fees were originally imposed and prove that his financial condition prevents further compliance with the court orders.

5. If respondent seeks reinstatement, he must comply with the requirements of Rule 18(a)–(e), RLPR.

STRAS, J., took no part in the consideration or decision of this case.